422 So.2d 558 (1982)
CALCASIEU MARINE NATIONAL BANK OF LAKE CHARLES, Plaintiff & Appellant,
v.
Carl MILLER, Defendant & Appellee.
No. 82-146.
Court of Appeal of Louisiana, Third Circuit.
November 12, 1982.
Rehearing Denied December 28, 1982.
*559 Newman, Thibodeaux & Marshall, H. Gayle Marshall, Lake Charles, for plaintiff & appellant.
Mark A. Holden and Eva Herzer, Lake Charles, for defendant & appellee.
Before CULPEPPER, DOMENGEAUX, GUIDRY, DOUCET and LABORDE, JJ.
CULPEPPER, Judge.
This is a suit for a deficiency judgment after the judicial sale in executory proceedings of a mobile home and contents. The district judge upheld the defense that the appraisal was "so casual as to be no appraisal." The plaintiff appealed. We reverse.
The issues are (1) whether the appraisement was "just and true" and (2) whether it was made with the minuteness required by LSA-R.S. 13:4365.
The facts are that in September of 1972 the defendant Miller purchased a new Aquarius mobile home from Abear Mobile Homes, Inc. The cash price was $6,823, but the finance charges totaled $4,725. Miller executed a promissory note in the sum of $11,025 payable in 60 monthly installments and secured by a chattel mortgage on the mobile home. The note was later endorsed to the plaintiff, Calcasieu Marine National Bank of Lake Charles. After three years, Miller failed to pay the installment due in January of 1975, at which time the principal balance due on the note was the sum of $8,728.25.
Pursuant to the acceleration clause of the note, the plaintiff bank declared the entire indebtedness due and instituted proceedings by executory process to seize and sell the mobile home and its contents. There was compliance with all of the formalities required for a judicial sale with appraisal. Notice was issued to the defendant Miller to be present to choose an appriaser, but he did not appear. Accordingly, the sheriff appointed two appraisers, Joseph A. Delafield and John P. Navarre. They appraised the home and contents for $1,500. At the judicial sale, on April 23, 1975, the plaintiff bank purchased the home and contents for the sum of $1,001, being two-thirds of the appraised value.
On May 28, 1975, the present petition for deficiency judgment was filed, but service was not effected on defendant until about four years later. On August 4, 1980, Foremost Insurance Company was substituted as a party plaintiff in place of Calcasieu Marine. On May 22, 1980, an answer was filed by defendant Miller asserting as an affirmative defense that there was no appraisal as required by LSA-R.S. 13:4365, in that (1) the appraisal was neither just nor true, and (2) it was not made with the minuteness required by the statute.
At the trial, Mr. Navarre testified that he remembered making the appraisal, and he thought he remembered Mr. Delafield examining the mobile home with him at the time. Navarre stated he had owned, sold and appraised mobile homes, and that he thought a fair appraisal of this particular home was $1,500. He stated mobile homes depreciate quickly. Navarre admitted he did not go inside the mobile home and did not examine the interior, the appliances or the furniture.
The other appraiser was Mr. Joseph Delafield, an employee of the plaintiff bank and also an attorney. He testified that he had made approximately 50 appraisals of mobile homes, and he could not remember this particular appraisal which was made almost five years before the trial. However, he identified his signature on the written and sworn appraisal.
Mr. George R. Sabiens, recovery supervisor for Foremost, testified the principal balance due on defendant's account is now $8,045.19.
The plaintiff also introduced the testimony of Mr. Gauthreaux, assistant vice-president of Calcasieu Marine National Bank. He stated that after the judicial sale he examined the mobile home and found it *560 necessary to spend $1,060 in repairs to put it in a saleable condition. The bank spent this amount and later resold the mobile home wholesale for $3,125. These figures tend to show that the appraisal was very near correct. The appraisal of $1,500 plus the $1,060 required to make the home saleable total $2,560, and the bank was able to sell the mobile home for only $3,125. This means that by making expenditures to put the mobile home in a saleable condition, the bank was able to increase the value by only $565 over the amount of the appraisal plus the amount necessary to repair it.
The defendant Miller testified that at the time the home was seized it was in good condition and needed no repairs. From this testimony, defendant argues that this mobile home for which he paid $11,023 did not depreciate to a value of only $1,500 in three years. Of course, the $11,023 included $4,725 for finance charges. The cash price of the home was only $6,823. We think this argument by plaintiff is clearly overcome by the testimony of the bank's vice-president, Mr. Gauthreaux, that they found it necessary to spend $1,060 to place the mobile home in a saleable condition and that they were able to sell it for only $3,125 wholesale.
There is no dispute as to the applicable law. LSA-C.C.P. articles 2771 and 2772 provide for deficiency judgments where property has been sold under executory process with appraisal in accordance with the provisions of LSA-R.S. 13:4106-4107. The requirements for appraisals incident to judicial sales are set out in LSA-R.S. 13:4365 as follows:
"The appraisers shall take an oath to make a true and just appraisement of the property.
"If the appraisers cannot agree, the sheriff shall appoint a third appraiser, who shall also be sworn, and whose decision shall be final.
"The property seized must be appraised with such minuteness that it can be sold together or separately.
"The appraisers shall reduce their appraisement to writing, sign it, and deliver it to the sheriff. Added Acts 1960, No. 32, § 6."
Jurisprudence has established the rule that lack of compliance with the statutory requirements for appraisement precludes a deficiency judgment. Carr v. Lattier, 188 So.2d 645 (La.App. 2d Cir.1966). However, where the sheriff's return of the judicial sale shows on its face that all of the requirements for appraisement were met, it will be presumed that there was a legal appraisement, unless the contrary be proved by the debtor. Jones v. Alford, 172 So. 213 (La.App. 2d Cir. 1937); Stockman v. Money, Inc., 277 So.2d 504 (La.App. 1st Cir.1973). In the present case, the sheriff's return shows on its face that all requirements regarding appraisement were met. The defendant had the burden to prove to the contrary.
The defendant cites General Motors Acceptance Corporation v. Boutte, 338 So.2d 363 (La.App. 3rd Cir.1976) as being similar to the present matter. In that case, the defendant Boutte bought a used 1970 Chevrolet in October of 1973 and signed a note for the sum of $2,796 payable in 30 monthly installments. When the balance was $2,122, defendant defaulted. Under executory process, the car was appraised at $200 and was purchased at the judicial sale by the plaintiff for $134. Although there was a dissenting opinion, the majority held that the appraisal was not a "true and just appraisement." The majority opinion states that within eight days after the sheriff's sale, a battery was installed in the car and it was sold at wholesale for $400 to a dealer who spent another $600 on the car and sold it for $1,495. We find GMAC v. Boutte distinguishable on the facts. In the present case, the appraisal was not nearly so small in comparison with the amount for which the vehicle was repaired and sold.
Defendant's second argument is that the appraisal was defective because it was not made "with such minuteness that it can be sold together or separately." The sheriff's return shows the furniture and appliances inside the mobile home were not separately appraised. The home and contents *561 were appraised for $1,500. It is defendant's contention that since the furniture and appliances were not separately appraised with sufficient minuteness to sell them separately, as required by LSA-R.S. 13:4365, the appraisement was fatally deficient. Our answer to this argument is that the mobile home was sold together with its contents. There is no proof by defendant that a separate appraisement of the built-in appliances such as the oven, range, refrigerator, water heater and furnace was even possible. Moreover, no separate appraisement or sale was requested by any bidder.
The defendant Miller has not sustained his burden of proof that the appraisement was deficient. The only evidence of the actual appraisement itself is the testimony of the two appraisers. This testimony shows they were both qualified and that the appraisement was sufficient as to form and procedure. There is no contention of fraud or error in the appraisement. According to Navarre's testimony, he actually inspected the outside of the mobile home and, considering the rapid depreciation of mobile homes concluded this one had a value of $1,500. Navarre testified he thought he remembered Delafield also being present. Of course, Delafield could not remember this particular appraisal, but this is not unusual in view of the fact that the trial was five years after the appraisal, and Delafield has made appraisals of approximately 50 of these homes. Therefore, the testimony of Delafield does not help defendant in his burden of proof. We are strongly influenced by the evidence which shows that actually the amount of the appraisal was fair and correct, as shown by the above discussed testimony of Mr. Gauthreaux, the bank's employee who cleaned, repaired and sold the mobile home.
We conclude plaintiff is entitled to a deficiency judgment. According to the testimony of Mr. Sabiens, the principal balance due on Miller's account as of January 25, 1975 was $8,728.25. Interest accrued up to the date of the sheriff's sale on April 23, 1975 was $174.56. The purchase price at the sale was $1,001. The costs of the sale totaled $143.48. Thus, Miller is entitled to a credit of $857.52.

THE DECREE
For the reasons assigned, the judgment appealed is reversed and set aside. It is now ordered, adjudged and decreed that there be judgment herein in favor of the plaintiff, Foremost Insurance Company, Inc., and against the defendant, Carl Miller, for the sum of $8,728.25 with interest thereon at the rate of 8% per annum from January 25, 1975 until paid, and attorney's fees of 10% of the principal and interest due, subject to a credit of $857.52 paid on April 23, 1975. All costs in the trial and appellate courts are assessed against the defendant.
REVERSED AND RENDERED.
LABORDE, J., dissents and assigns reasons.
DOUCET, J., dissents for reasons assigned by LABORDE, J.
LABORDE, Judge, dissenting.
I respectfully dissent.
Plaintiff, Foremost Insurance Company,[1] sues Carl Miller to obtain a deficiency judgment against him following the judicial sale of a mobile home and its contents in an earlier executory proceeding. The lower court, after finding that the appraisal was not made in accordance with the applicable law, dismissed Foremost's suit. Foremost appeals. I would affirm.
Defendant Miller purchased a new Aquarius mobile home in September, 1972, executing a promissory note for its purchase price of $11,025.00 which was secured by a chattel mortgage on the home and twelve items in it. The promissory note was later endorsed to Calcasieu Marine National Bank of Lake Charles. Miller failed *562 to pay the installment due in January of 1975, and under the acceleration clause of the note, the entire unpaid balance of $8,728.25 became due together with interest and attorney's fees.
Calcasieu Marine National Bank, pursuant to the provisions of the note, declared the entire indebtedness due and instituted proceedings by executory process foreclosing on the mortgaged mobile home and its contents. They were seized, appraised for $1,500 and sold for $1,001.
Calcasieu Marine National Bank instituted this action for a deficiency judgment in which Foremost was later substituted as party-plaintiff in its place. In his answer to the deficiency judgment suit, Miller asserted that there was no appraisal as required by LSA-R.S. 13:4365 because the appraisal made was neither just nor true nor was it made with such minuteness as is required by law. Thus, he argued, under the applicable law, the debt stands fully satisfied and discharged, and Foremost is not entitled to obtain a deficiency judgment.
A creditor can obtain a deficiency judgment only if the property has been sold under an executory proceeding after a valid appraisal has been made in accordance with the applicable law. LSA-C.C.P. Arts. 2771 and 2772; LSA-R.S. 13:4106-4107. The requirements for appraisals incident to judicial sales are set out in LSA-R.S. 13:4365, which states:
"The appraisers shall take an oath to make a true and just appraisement of the property.
If the appraisers cannot agree, the sheriff shall appoint a third appraiser, who shall also be sworn, and whose decision shall be final.
The property seized must be appraised with such minuteness that it can be sold together or separately.
The appraisers shall reduce their appraisement to writing, sign it, and deliver it to the sheriff. Added Acts 1960, No. 32, § 6."
As this court stated in Ford Motor Credit Company v. Soileau, 323 So.2d 221 (La. App.3rd Cir.1975), the rationale of the Deficiency Judgment Act (LSA-R.S. 13:4106-4107) is "the strong public policy of protecting a debtor from possible abuse resulting from the judicial sale of his property without notice and without the benefit of proper appraisement." In order to prevent the thwarting of that public policy, it is necessary that the statutory requirements be complied with. Ford Motor Credit Company v. Samec, 227 So.2d 164 (La.App. 2nd Cir.1969).
With these principles in mind, I return to the sole issue on appeal which is whether or not the appraisal of Miller's mobile home and its contents meets the above statutory requirements such that Foremost is entitled to a deficiency judgment against Miller.
Two appraisers, John Navarre and Joseph Delafield appraised the mobile home and its contents prior to the sheriff's sale, each appraising it at $1,500. At the trial, Mr. Delafield, the appraiser employed by Foremost, testified that he did not recall making the appraisement. Thus, his testimony is not helpful in determining whether the appraisal was just and made with the requisite minuteness such that the home and its contents could be sold together or separately. Mr. Navarre, the appraiser appointed by the Sheriff, admitted that he made his appraisal without viewing the inside of the mobile home. Along with the mobile home, twelve items located inside of it were also seized and sold. These items included a stove, refrigerator, hot water heater, furnace and several pieces of original furniture. Having never viewed these items, I do not think that Mr. Navarre's appraisal of the property meets the statutory requirement of such minuteness that the seized property could be sold together or separately. Further, since Mr. Navarre never saw the inside of the mobile home, he was in no position to evaluate its condition. For example, he could not have evaluated the condition of its walls, floors, plumbing and fixtures. In short, neither of the appraisers could explain or justify why he appraised at $1,500 a three year old mobile home which was purchased for $11,025.
*563 In contrast, at the trial, Miller introduced evidence showing that his home was in fair condition and its appliances were in good working order. He also introduced evidence showing that the home was re-sold at a reasonable profit to a wholesaler after only a general clean-up was performed.
In his written reasons, the trial judge stated:
"The court is of the opinion (considering the testimony of the manner of appraisal and other testimony concerning the condition of the property at the time of seizure and the subsequent re-sale of the said property,) that the appraisal was so casual as to be no appraisal in the manner required by law and therefore plaintiff's suit for deficiency judgment cannot be maintained."
The record supports these findings of the lower court.
For the above reasons, I would affirm the judgment of the lower court at Foremost's costs.
NOTES
[1] The deficiency judgment proceedings were initially instituted by Calcasieu Marine National Bank of Lake Charles which subsequently assigned its interest in the matter to Foremost Insurance Company. Foremost moved to substitute as party plaintiff which motion was granted.